USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 4/28/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Jason Johnson,<br><br>                      Plaintiff,<br><br>      –v–<br><br>City of New York, *et al.*,<br><br>                  Defendants. | 18-CV-9600 (AJN)<br><br>MEMORANDUM<br>AND ORDER |

ALISON J. NATHAN, District Judge:

Plaintiff Jason Johnson brings this action against Defendants City of New York ("the City"), Brian Smith, and Jason Ribisi alleging employment discrimination on the basis of race, employment discrimination on the basis of perceived sexual orientation, and retaliation. Johnson asserts claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, 42 U.S.C. § 1983 ("Section 1983"), the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107, *et seq.* Now before the Court is Defendants' motion to dismiss this action in its entirety for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 33. For the reasons articulated below, Defendants' motion to dismiss is granted in part and denied in part.

**I.     BACKGROUND**

The following facts are drawn from the First Amended Complaint and assumed to be true for purposes of this motion to dismiss.

Plaintiff Johnson, who is African-American, joined the New York City Fire Department in 2007, initially serving in ladder companies. First Amended Complaint ("FAC"), Dkt. No. 28,

1

¶ 13.  In January of 2016, Plaintiff joined Special Operations Command ("SOC") Squad 18.  *Id.* ¶ 19.  The First Amended Complaint describes SOC as "an elite division of the FDNY that trains its members to conduct complex rescues and guarantees a 12% pay raise."  *Id.* ¶¶ 2, 18.  Plaintiff alleges that the City has a *de facto* policy and practice of allowing SOC captains to choose squad members, which he claims has caused a disproportionate exclusion of black firefighters from SOC and allows hiring decisions to be affected by bias.  *Id.* ¶¶ 14, 54.  Plaintiff had attempted to join SOC for some time before 2016.  *Id.* ¶¶ 14-16.

After he joined SOC, Plaintiff claims that he was targeted for what he calls "over-drilling."  *Id.* ¶ 22.  Specifically, he alleges that "[o]n several occasions, [he] was singled out to perform drills that were out of line with Department norms," and that were dangerous, humiliating, and damaging to his reputation.  *Id.* ¶ 23.  On August 28, 2016, Plaintiff alleges that he was forced to perform what is normally a two-person water rescue drill by himself and without proper equipment.  *Id.* ¶ 24.  He claims that his squad members took pictures of him in the water and posted them to a group chat, which elicited responses such as "look at the black in the water," and "see how out of place he looks?"  *Id.*  He also alleges that his squad members made racially disparaging comments during the drill such as "black guys really don't do well in water."  *Id.*  On two other occasions, Plaintiff alleges that he was again forced to perform multi-person drills alone.  *Id.* ¶¶ 25-26.  On Christmas Day of 2016, Plaintiff alleges that he was forced to perform a series of drills in competition with a white firefighter.  *Id.* ¶ 28.  Plaintiff claims that drilling on Christmas Day is unheard of.  One of the drills involved a trivia competition and Plaintiff claims that his squad members screamed questions at him but not the white firefighter.  *Id.* ¶ 30.  After another of the Christmas Day drills, Plaintiff alleges that he was criticized for

taking longer to complete the task than the white firefighter, even though the drill is not normally timed. *Id.* ¶ 31.

Furthermore, Plaintiff alleges that he was harassed by his SOC squad members on the basis of his perceived sexual orientation and subjected to homophobic messages and comments. *Id.* ¶¶ 33-34.  Plaintiff gives the example of a photoshopped image of him changing with a thought bubble reading "hey boys" added, which was sent to the squad group chat. *Id.* ¶ 35.  In one instance Plaintiff alleges that a manipulated video was sent to the group chat of him in front of a rainbow flag with the caption "now we have official confirmation that he is gay." *Id.* ¶ 36.  On another occasion, Plaintiff alleges that one of his squad members sent him a text of a gif of Richard Simmons with the caption "it's your birthday and you're a homo." *Id.* ¶ 38.  He also alleges that his fellow SOC squad members would make homophobic comments about his food choices such as "only gay guys would order salad." *Id.* ¶ 40.  When Plaintiff would jog or ride his bike to work, he alleges that his co-workers would make comments such as "Did you run through west village to say hi to your gay friends?" or "Did it rain outside because you look like you were in a wet t-shirt competition?" *Id.* ¶ 41.  In June of 2016, Plaintiff alleges that he was sexually assaulted when colleague Defendant Jason Ribisi grabbed his penis while riding a firetruck. *Id.* ¶ 43.  In an attempt to make Ribisi move away from him, Plaintiff alleges that he kissed Ribisi, which only prompted further comments about his perceived sexual orientation. *Id.* ¶ 44.

On March 18, 2017, Plaintiff alleges that he was called into the office of his Captain, Defendant Brian Smith. *Id.* ¶ 49.  He claims that Smith told him that he "needed improvement" and was "failing to retain information." *Id.*  Smith went on to say that it was not working out for Plaintiff at SOC and that "[m]y guys don't feel comfortable with you." *Id.*  Plaintiff alleges that

Smith told Plaintiff to write a letter requesting a transfer from the squad and that if he did not do so, Smith would make his life a "living hell." *Id.* ¶ 50. Plaintiff claims that the next day a chief in his battalion had sent an email ending his detail to SOC effective March 25, 2017. *Id.* ¶ 52. Despite this email Plaintiff claims that he still signed a letter like the one described by Smith, which was drafted by a lieutenant in the company. *Id.* ¶¶ 52-53. He was then transferred back to his previous ladder company. *Id.* ¶ 59. Plaintiff alleges that certain requests for transfers that he made after returning to the ladder company were denied in retaliation for his filing of an EEOC complaint. *Id.* ¶¶ 59-60.

## II.     LEGAL STANDARD

To withstand a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff is not required to provide "detailed factual allegations" in the complaint but must assert "more than labels and conclusions." *Twombly*, 550 U.S. at 555. Ultimately, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* The Court must accept the allegations in the complaint as true and draw all reasonable inferences in the non-movant's favor. *ATSI Communs, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

## III.    DISCUSSION

### A.     Plaintiff Has Abandoned Some of His Claims

In his opposition to the motion to dismiss Plaintiff failed to respond to Defendants' arguments that all retaliation claims, punitive damages claims, and claims against Smith and Ribisi in their official capacities should be dismissed. Plaintiff also failed to respond to

Defendants' contention that the First Amended Complaint failed to state a claim against Ribisi for direct liability in his individual capacity, as opposed to aiding and abetting liability. The Court therefore treats these claims as abandoned and dismisses them with prejudice. See *Felix v. City of New York*, 344 F. Supp. 3d 644, 654-55 (S.D.N.Y. 2018).

Plaintiff also does not dispute Defendants' contention that any Title VII claims occurring prior to March 18, 2017 are time-barred. Instead, he correctly notes that facts that occurred before this date may nonetheless be used to support his timely claim that his transfer from SOC was discriminatory.

### B. Plaintiff's Section 1983 Against the City Is Dismissed

When bringing a Section 1983 claim against a municipality for discrimination, a plaintiff must, under the *Monell* doctrine, allege that "the challenged acts were performed pursuant to a municipal policy or custom." *Patterson v. County of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692-94 (1978)). The policy or custom "in the *Monell* sense, may of course be made by the municipality's legislative body . . . but it also may be made by a municipal official possessing final authority to establish municipal policy with respect to the action ordered." *Vives v. City of New York*, 524 F.3d 346, 350 (2d Cir. 2008) (quotation omitted). Whether an official has such authority is a question of state law. *Id.*

Plaintiff argues that Smith's alleged decision to have him transferred from SOC constitutes a policy decision for which the City may be held liable. However, the ability of a superior to make a personnel decision does not mean that the superior has the requisite final policymaking authority under *Monell*. *Littlejohn v. City of New York*, 795 F.3d 297, 315 (2d Cir. 2015). To the contrary, the Second Circuit has found that for New York City, only the Mayor, City Council, and the City's Personnel Director have final policymaking authority with respect to

personnel decisions.  *Id.*; *see also Boonmalert v. City of New York*, 721 F. App'x 29, 34 (2d Cir. 2018); *Soto v. Schembri*, 960 F. Supp. 751, 759 (S.D.N.Y. 1997).  Smith is not alleged to have occupied any of these positions.  Therefore, his alleged decision to have Plaintiff transferred from SOC could not "be said to [have] represent[ed] official City policy."  *Littlejohn*, 795 F.3d at 315.

Plaintiff also alleges that the City has a policy or custom of allowing SOC Captains, such as Smith, to decide which firefighters are assigned to their companies.  FAC ¶¶ 14, 54.  These decisions can allegedly be made based on subjective criteria, which Plaintiff claims can allow them to be "infected by bias."  *Id.* ¶ 14.  Plaintiff alleges that this policy has "has caused a disproportionate exclusion of Black firefighters from SOC."  *Id.* ¶ 54.

Plaintiff does not argue that the City, as opposed to Smith, adopted this alleged policy with discriminatory intent or maintained with deliberate indifference to its discriminatory consequences.  Rather, he argues that he need only show that the policy "resulted in" or "caused" a constitutional violation in order for the City to be held liable.  *See* Dkt. No. 41 at 10-11.  But to establish *Monell* liability, "a plaintiff must show that the municipal action was taken with the requisite degree of culpability *and* must demonstrate a direct causal link between the municipal action and the deprivation of federal rights."  *Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997) (emphasis added).  When, as here, "a plaintiff seek[s] to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate a plaintiff's rights," pleading *culpability* requires alleging that the municipal action was taken with at least "deliberate indifference as to its known or obvious consequences."  *Id.* at 407 (quotation omitted).  Plaintiff is thus wrong to suggest that causation is all that is required.

Indeed, Plaintiff could not have argued that the requisite degree of culpability was alleged, because the First Amended Complaint lacks allegations from which a plausible inference of deliberate indifference may be drawn. Merely claiming that Plaintiff was one of only two black SOC firefighters in Manhattan cannot give rise to such an inference without at least an allegation as to how many of these elite firefighters were in Manhattan during the relevant period. Instead, the allegations in the First Amended Complaint mirror the argument in Plaintiff's briefing that causation is all that is required for *Monell* liability. *See* FAC ¶ 14, 54.

Plaintiff's Section 1983 claim against the City is therefore dismissed.

### C. Plaintiff's Has Stated a Title VII Claim for Discrimination on the Basis of Perceived Sexual Orientation but not Discrimination on the Basis of Race

Plaintiff brings Title VII claims for discrimination on the basis of race and discrimination on the basis of perceived sexual orientation. "[I]n a Title VII discrimination case, a plaintiff must plausibly allege that (1) the employer took adverse action against him, and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015). To satisfy this second element at the motion to dismiss stage, a plaintiff need only allege facts that "give plausible support to a minimal inference of discriminatory motivation." *Littlejohn*, 795 F.3d at 311. "An inference of discrimination can arise from circumstances including, but not limited to, 'the employer's criticism of the plaintiff's performance in . . . degrading terms [that are race or sexuality-related]; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge.'" *Id.* at 312 (2d Cir. 2015) (quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009)). Or it can arise "when an employer replaces a terminated or demoted employee with an individual outside the employee's protected class." *Id.*

7

at 312-13 (citing *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 135 (2d Cir. 2000)).  Defendants contend that Plaintiff has failed to allege facts that support a minimal inference of discrimination for both the race discrimination claim and the perceived sexual orientation discrimination claim.

On the race discrimination claim, the Court agrees with Defendants.  Plaintiff first argues that his allegations of over-drilling give rise to a plausible inference of discrimination.  As noted above, Plaintiff alleges that "on several occasions, [he] was singled out" to perform unusual and humiliating drills.  FAC ¶ 23.  An inference of discrimination can be supported by disparate treatment of otherwise "similarly situated" employees.  *Littlejohn*, 795 F.3d at 312 (citing *Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003)).  Here, while Plaintiff alleges that he was "singled out," he fails to allege that similarly situated white firefighters were not "singled out" for over-drilling.  In fact, Plaintiff alleges that on Christmas Day 2016, a white SOC firefighter was also singled out to perform allegedly unusual drills alongside Plaintiff.  *See* FAC ¶ 29.  Moreover, Plaintiff's allegation that he was criticized for taking longer than the white firefighter to complete one of the Christmas Day drills cannot give support an inference of discrimination because he does not allege that he and white firefighter were actually similarly situated—i.e. that they took the same amount of time to complete the drill.  Plaintiff's claim that, during the trivia drill, questions were yelled at him but not the white firefighter is also too trivial to support even a minimal inference of discrimination.

Additionally, Plaintiff alleges that during a water drill, he was subjected to several negative remarks that invoked racist stereotypes about African-Americans and swimming.  *See* FAC ¶ 24.  These remarks were alleged to have occurred nearly seven months before Plaintiff's transfer from SOC.  The Second Circuit has long held that "stray remarks" that are temporally removed from the adverse employment action at issue cannot, without more, meet even a  "*de*

*minimis* burden of raising an inference of discriminatory intent." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 468 (2d Cir. 2001). This applies with additional force when the remarks are not made by a decisionmaker. *See Dixon v. Int'l Fed'n of Accountants*, 416 F. App'x 107, 110 (2d Cir. 2011) ("[S]tray comments [by a co-worker who played no role in the plaintiff's termination] do not create an inference of discrimination."); *Campbell v. Alliance Nat'l Inc.*, 107 F. Supp. 2d 234, 247 (S.D.N.Y. 2000). Thus, these alleged comments cannot save his Title VII race discrimination claim. Even drawing all inferences in Plaintiff's favor, he has failed to allege facts that support a minimal inference of race discrimination. His Title VII claim that his transfer from SOC was racially discriminatory is dismissed.

In contrast, Plaintiff has stated a Title VII claim that his transfer from SOC was at least in part due to discrimination on the basis of perceived sexual orientation. Smith allegedly said that he wanted Plaintiff to leave SOC in part because "[m]y guys don't feel comfortable with you." FAC ¶ 49. Plaintiff has plausibly alleged that the principle source of his co-workers' discomfort with him came from his perceived sexual orientation. He has done so by pointing to a number of derogatory comments from his co-workers that involved his perceived sexual orientation, as well as one alleged instance of sexual assault. *See* FAC ¶¶ 33-46.

When evaluating a motion to dismiss in an employment discrimination case, the Court must "be mindful of the elusive nature of intentional discrimination" and "draw on its judicial experience and common sense." *Vega*, 801 F.3d at 86 (quotations omitted). At this stage in the proceeding, Plaintiff may draw the plausible inference that when Smith told Plaintiff to leave SOC, he was aware of the allegedly true reason why his "guys [didn't] feel comfortable" with Plaintiff: because they believed he was gay. If Smith decided that Plaintiff should leave SOC in part because of what he knew to be the homophobic "discomfort" of other firefighters with

9

Plaintiff, this would of course violate Title VII.  *See Zarda v. Altitude Express, Inc.*, 883 F.3d 100 (2d Cir. 2018) (en banc).  Plaintiff has therefore provided at least minimal support to raise an inference of discrimination on the basis of perceived sexual orientation.  The motion to dismiss this claim is denied.

        **D.**       **Plaintiff's NYSHRL and NYCHRL Claims Are Dismissed In Part**

Defendants also seek dismissal of Plaintiff's NYSHRL and NYCHRL claims.  Title VII and NYSHRL claims are analyzed under the same standard.  *See Leibowitz*, 584 F.3d at 498 n.1.  And while the NYCHRL protects a broader swath of adverse employment actions from discrimination than Title VII, the causation inquiry as to whether any given adverse employment action was motivated by discrimination under the NYCHRL "closely mirrors" the inquiry under Title VII.  *Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 76 n.13 (2d Cir. 2015).  For the reasons stated above, Plaintiff has failed to allege facts that support a minimal inference of discrimination with respect to his claim that his transfer was due to race discrimination, but has done so with respect to his perceived sexual orientation discrimination claim.  Therefore, only Plaintiff's NYSRL and NYCHRL claims that his transfer from SOC was racially discriminatory are dismissed.

Defendants' sole argument in favor of dismissing Plaintiff's aiding and abetting NYSHRL and NYCHRL claims against Smith and Ribisi is that Plaintiff has failed to plead an underlying violation of these statutes.  Accordingly, Plaintiff's aiding and abetting NYSHRL and NYCHRL claims are dismissed only insofar as they are based on Plaintiff's claim that his transfer was racially discriminatory.

        **E.**       **All Dismissals Are With Prejudice**

Plaintiff was given an opportunity to amend his Complaint following Defendants' filing of their initial motion to dismiss. *See* Dkt. Nos. 24, 28. Therefore, the above dismissals are with prejudice.

## IV. CONCLUSION

For the reasons articulated above, Defendants' motion to dismiss is GRANTED with respect to Plaintiff's retaliation claims, punitive damages claims, claims against Smith and Ribisi in their official capacities, claims for direct liability against Ribisi in his individual capacity, Section 1983 claim, claims that his transfer from SOC was racially discriminatory, and claims for aiding and abetting liability that were premised on the claim that his transfer from SOC was racially discriminatory. The motion is DENIED with respect Plaintiff's claims that his transfer from SOC was due to perceived sexual orientation discrimination, as well as Plaintiff's related aiding and abetting claims.

The Court hereby reschedules the initial pre-trial conference for May 22, 2020 at 3:45 p.m. One week in advance of the conference, the parties should submit the joint letter and proposed case management plan described in the Court's November 15, 2018 order. *See* Dkt. No. 9.

This resolves Dkt. No. 33.

SO ORDERED.

Dated: April 28, 2020
 New York, New York

_____
ALISON J. NATHAN
United States District Judge